C T

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MOBILE ENTERTAINMENT, INC. a Delaware corporation;
LAVALIFE, INC. a Delaware corporation; VERISIGN, INC. a Delaware corporation,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MIGUEL COREN, individually and on behalf of a class of similarly situated individuals



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**E-FILED**
Oct 16, 2008 11:03 AM
David H. Yamasaki
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
Case #1-08-CV-125363 Filing #G-11515
By M. Rosales, Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Santa Clara
191 N. First Street, San Jose, CA 95113

CASE NUMBER:
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alan Himmelfarb. KAMBEREDELSON LLC,
2757 Leonis Blvd., Los Angeles, CA 90058, (323) 585-8696

DATE: _____ Clerk, by _____, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* LAVALIFE, INC
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 10/21/08

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

Alan Himmelfarb (SBN 90480)
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Vernon, California 90058
Telephone: (323) 585-8696

*Attorneys for Plaintiff*

**E-FILED**
Oct 16, 2008 11:03 AM
David H. Yamasaki
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
Case #1-08-CV-125363 Filing #G-11515
By M. Rosales, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| MIGUEL COREN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>MOBILE ENTERTAINMENT, INC. a Delaware corporation; LAVALIFE, INC. a Delaware corporation; VERISIGN, INC. a Delaware corporation,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violation of Cal. Civ. Code § 1770; and<br>(2) Violation of Cal. Bus. & Prof. Code § 17200<br>(3) Unjust Enrichment;<br>(4) Trespass to Chattels; and<br>(5) Tortious Interference with a Contract.<br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Miguel Coren brings this class action complaint against Defendants Mobile Entertainment, Inc., Lavalife, Inc. and Verisign, Inc. seeking redress for Defendants' unlawful practice of charging cellular telephone customers for certain products and services the customers have not authorized. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

1. Plaintiff Miguel Coren is a resident of Massachusetts.

2. Defendant Mobile Entertainment, Inc. d/b/a MEI ("MEI") is a "mobile content provider" that creates and distributes, among other things, music ringtones, wallpapers, games, graphics, horoscopes, data, and/or news (collectively, "content"), information transmitted or received via text message and/or other software applications to cell phone devices. MEI is a Delaware corporation, with its principal place of business in Toronto, Canada. It does business throughout the State of California and in this County.

3. Defendant Lavalife, Inc. ("Lavalife") is the corporate parent of Defendant MEI and is also a "mobile content provider" that creates and distributes, among other things, music ringtones, wallpapers, games, graphics, horoscopes, data, and/or news (collectively, "content"), information transmitted or received via text message and/or other software applications to cell phone devices. Lavalife is a Delaware corporation, with its principal place of business in Toronto, Canada. It does business throughout the State of California and in this County.

4. Defendant VeriSign, Inc. ("VeriSign") is an aggregator that distributes and bills cellular telephone consumers for, among other things, music ringtones, wallpapers, games, graphics, horoscopes, data, news, and other information transmitted or received via chat services (collectively, "content"). VeriSign is a Delaware corporation with its headquarters and principal place of business in Santa Clara County, California. It does business throughout the State of California and in this County.

**JURISDICTION**

5. This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.

6. This Court has jurisdiction as Defendant Verisign resides in this County and the cause of action arose here.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

## VENUE

7. Venue is proper in this Court pursuant to Code of Civil Procedure because Plaintiff resides in this county.

## CONDUCT COMPLAINED OF

8. This case arises from two closely related phenomena. The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including -- most significantly for present purposes -- "premium" text message services. These services, also known as "mobile content" include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio and participatory television).

9. The second underlying phenomenon of this case constitutes its very core. That is, just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by the wireless carriers. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies known as aggregators. These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both the aggregators and the wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount each premium mobile content transaction.

10. The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw is an open secret within the industry, but little understood outside of it. In short, the

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

billing and collection systems established by companies including Defendants in aid of the premium mobile content industry that enriches them are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

11. Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider, needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

12. Armed with only a cell phone number, mobile content providers such as Defendants MEI and Lavalife can simply provide that number, along with an amount to be charged, to a billing aggregator (such as Defendant VeriSign, Inc.). The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

13. Because the protections normally present in consumer transactions -- such as signatures and private credit card numbers -- are absent from this process, the likelihood of false charges increases enormously. And because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

### Defendants MEI and Lavalife's Role in the Scheme to Defraud as Mobile Content Providers

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

14. Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only information mobile content providers such as Defendants MEI and Lavalife need to charge a consumer for their products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

15. Mobile content providers such as Defendants MEI and Lavalife can simply provide that cellular phone number, along with an amount to be charged, to a billing aggregator. The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

16. Because the protections normally present in consumer transactions – such as signatures and private credit card numbers – are absent from this process, the likelihood of false charges increases enormously. And, because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers such as MEI have powerful financial incentives to collect as many cell phone numbers as possible, but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

17. As they also know, MEI and Lavalife routinely process charges for mobile content that have not been authorized by the charged party.

18. To accomplish this untoward goal, Defendants MEI and Lavalife engage in numerous fraudulent and improper billing practices, including, but not limited to, duplicate billing of identical cellular telephone numbers through multiple aggregators, including Defendant Verisign.

19. As a result, MEI and Lavalife have for years been systematically, repeatedly and without authorization, billing their customers for purchase of products and services not agreed to by those customers. Defendants MEI, Lavalife and third-party service provider partners have, on information and belief, profited significantly through this practice.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
5

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

20. MEI and Lavalife cooperate with numerous other companies and partners in the scheme to fraud, including aggregators, copyright licensors and affiliate marketers, among others.

### Verisign's Role in the Scheme to Defraud as an Aggregator

21. In order to tap into the emerging wireless content marketplace and make content services available to wireless consumers, content providers must first obtain access to wireless carriers' mobile communications networks and frequently do so by "partnering" with aggregators – intermediary companies that offer content providers (their "content provider partners") direct access to the carriers through existing relationships. This allows content providers to focus on developing and marketing branded content, applications, and programs while aggregators manage the complex carrier relationships, distribution, billing, and customer service.

22. Aggregators operate mobile transaction networks that help companies develop, deliver, and bill for mobile content services to compatible mobile devices throughout the State of California and the nation.

23. By using their end-to-end technology platforms, their relationships with U.S. carriers, and other value-added services, these aggregators have forged a crucial link between wireless carriers and mobile content providers. They have enabled the transformation of wireless technology into a marketing, content delivery, and collections process, while carving out a profitable role for themselves as very critical middlemen in this rapidly growing industry.

24. Aggregators such as Verisign have developed a vast distribution system that integrates into the wireless networks of some of the largest wireless carriers nationwide, providing direct connections to hundreds of mobile operators.

25. While aggregators charge their content provider customers some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

26. The carrier then bills and collects the charge from their current subscriber, retains a portion of the proceeds as their "revenue share," and remits the balance to the aggregator who has direct access to their network and who retains a percentage of the balance in the form of their own "revenue share." The aggregator then remits the remainder directly to the mobile content provider (or, in some instances, to another aggregator who retains a percentage of the balance in the form of their own "revenue share" and remits the balance to their mobile content provider client).

27. Aggregators have in the United States registered numerous transactions and processed significant amounts of money in transactions over recent years and have profited greatly from their arrangement with their industry partners.

### Affiliate Marketers' Role in the Scheme to Defraud

28. Affiliate marketers are internet advertising networks that provide a distribution platform for mobile content providers' products and services.

29. Advertising is an essential step in the mobile content ecosystem. Without the ability to drive users to their websites, mobile content providers such as MEI and Lavalife would be unable to earn virtually any revenue, no matter how misleading or fraudulent their services. Absent advertising through these so-called affiliate marketers, the fraudulent mobile content providers would have significantly fewer visitors to their websites and their illegal revenues would drop dramatically.

30. Many affiliate marketers with whom mobile content providers contract, including on information and belief Defendants MEI and Lavalife, fail to clearly and accurately disclose a host of highly relevant information to consumers about purchasing mobile content, such as the service's price, subscription period and cancellation procedures, among others.

31. Indeed, many affiliate marketers specifically employ anti-consumer practices simply to achieve the next "sale," including so-called "negative options" which involves the practice of presenting a consumer with an opportunity to consent in advance to continue to receive products or services in the future until cancelled. In such situations the seller frequently interprets the consumer's silence or failure to take an affirmative action to reject goods or services, or to cancel the sales agreement, as an agreement to continue to receive the

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
7

offer, when in fact the consumer intends just the opposite. Moreover, one of the mobile content industry's largest affiliate marketers, Epic Advertising, Inc. f/k/a Azoogleads US, Inc. ("Azoogle"), recently settled claims brought against it by the Office of the Attorney General of the State of Florida for deceptively marketing mobile content through a negative option rubric.

32. Defendants MEI and Lavalife know affiliate marketers are loathe to adequately disclose the relevant information about purchasing mobile content for fear of scaring off potential customers. Fortunately for deceptive affiliate marketers, however, Defendants MEI and Lavalife have systematically declined to require those with whom it contracts to obtain consumers' true advance consent before causing such consumers to be billed.

33. Indeed, if Defendants wanted to end this illegal billing, they could do so in an instant. All it would have to do to ensure that they are obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the carrier to the account holder and his/his authorized representatives at the time it is opened, and require that it be produced anytime a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

34. But, instead of implementing such a simple safeguard, Defendants have intentionally created, maintained and promoted a system that encourages fraud at every step. Such a system constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

**THE FACTS RELATING TO NAMED PLAINTIFF**

35. In or about 2000, Plaintiff purchased new cell phone service for his personal use from an authorized sales representative from an established wireless carrier.

36. On that same day, in exchange for a cellular telephone service plan, Plaintiff agreed to pay his carrier a set fee for a period of several months.

37. Beginning in or about 2007, Plaintiff's cell phone account was charged by Defendants for unwanted mobile content services.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

8

38. At no time did Plaintiff authorize the purchase of these products and services offered by Defendants.

39. During the relevant time period, Defendants caused Plaintiff to be charged service fees in the amount of several dollars for such mobile content charges.

40. At no time did Plaintiff authorize Defendants or anyone else to bill him for these charges and at no time did Defendants verify Plaintiff's purported authorization of these charges.

41. Defendants have yet to provide a full refund of the unauthorized charges consisting of the premium text message charges, ordinary text messages, data charges, back interest, implement adequate procedures to ensure that such unauthorized charges would not appear in future billing periods and/or an assurance that such unauthorized charges would not appear in future billing periods.

## CLASS ALLEGATIONS

42. Plaintiff brings this action, pursuant to Code of Civil Procedure § 382 on behalf of himself and three classes, defined as follows:

    A. all wireless telephone subscribers in the nation who suffered losses or damages as a result of MEI billing for mobile content products and services not authorized by the subscriber (the "MEI Class");

    B. all wireless telephone subscribers in the nation who suffered losses or damages as a result of Lavalife billing for mobile content products and services not authorized by the subscriber (the "Lavalife Class");

    C. all wireless telephone subscribers in the nation who suffered losses or damages as a result of Verisign billing for mobile content products and services not authorized by the subscriber (the "Verisign Class");

provided, however, that the following are excluded from the Classes: (i) Defendants, and (ii) any employee of the Defendants.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

9

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

43. The respective Classes consist of thousands of individuals and other entities, making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

44. The claims of Plaintiff are typical of the claims of all of the other members of the respective Classes.

45. Plaintiff will fairly and adequately represent and protect the interests of the other members of the respective Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the respective Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the respective Classes.

46. Absent a class action, most members of the respective Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

47. Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the respective Classes.

48. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the respective Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the respective Classes. Plaintiff and the other members of the respective Classes have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

49. There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the respective Classes.

50. Common questions for the respective Classes include but are not limited to the following:

(a) Whether Defendants have unjustly received money belonging to Plaintiff and the respective Classes and whether under principles of equity and good conscience, Defendants should not be permitted to retain it.

(b) Whether Defendants tortiously interfered with contracts between Plaintiff and the respective Classes, on the one hand, and their wireless carriers, on the other hand, by causing them to be charged for products and services by their carriers that were unauthorized.

(c) Whether Defendants' conduct described herein violates California Business and Professions Code sections 17200, *et seq.*

(d) Whether Defendants' conduct described herein violates California Consumer Legal Remedies Act ("CLRA").

## COUNT I
**(Violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770 on behalf of the MEI, Lavalife, and Verisign Classes)**

51. Plaintiff incorporates by reference the foregoing allegations.

52. The mobile content services that are the subject of this complaint are services for other than a commercial or business use, as described in Cal. Civ. Code § 1761(b). The mobile content services are used for personal, family, or household purposes, and mobile content service subscribers are consumers under the definition in Cal. Civ. Code § 1761(d). Plaintiff and the other members of the respective Classes use the wireless services acquired from wireless carriers for personal, family, or household purposes, and are consumers under the definition in Cal. Civ. Code § 1761(d).

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
11

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

53. Defendants misrepresent the approval for, characteristics of, and the obligations associated with the mobile content services when they transmit billing instructions to aggregators and carriers for mobile content services to Plaintiff and the other members of the respective Classes which indicate that the mobile content services and the correspondingly charges for those services were approved. These bills cause the Plaintiff and the other class members to pay charges for mobile content services to which they did not consent, and violate Cal. Civ. Code § 1770(a)(2), (5), (14).

54. Collectively, these CLRA violations have damaged the Plaintiff and other members of the respective Classes by causing them to pay falsely inflated cellular service bills to their carriers as well as the lost time required to sort, read, discard and attempt to prevent future charges for unwanted mobile content services, and lost storage space, connectivity, and computing resources on their cellular phones.

55. Plaintiff, on his own behalf and behalf of the other members of the respective Classes, seeks an order enjoining Defendants' CLRA violations alleged herein and the imposition of a constructive trust on and restitution of property gained by the CLRA violations, and court costs and attorney's fees under the CLRA (Cal. Civ. Code § 1780(d)).

**COUNT II**
**(Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 on behalf of the MEI, Lavalife, and Verisign Classes)**

56. Plaintiff incorporates by reference the foregoing allegations.

57. Defendants' communications to aggregators and carriers falsely state that Plaintiff and the other members of the respective Classes have approved, authorized, and/or consented to charges for mobile content services, and are deceptive and unfair. Further, Defendants' communications are unlawful because they violate the CLRA, CFAA, and/or the FCA.

58. The acts alleged above are unlawful, unfair or fraudulent business acts or practices and constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
12

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

59. Plaintiff, on his own behalf and behalf of the other class members, seeks an order enjoining Defendants' unfair competition alleged herein, and the imposition of a constructive trust on and restitution of property gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to, in part, Cal. Code Civ. Proc. § 1021.5.

## COUNT III
### (Restitution/Unjust Enrichment on behalf of the MEI, Lavalife, and Verisign Classes)

60. Plaintiff incorporates by reference the foregoing allegations.

61. A benefit has been conferred upon Defendants by Plaintiff and the members of the respective Classes. Defendants have received and retain money belonging to Plaintiff and the members of the respective Classes resulting from their billing and collecting significant amounts of money in unauthorized mobile content charges.

62. Defendants appreciate or have knowledge of said benefit.

63. Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and the members of the respective Classes which they have unjustly received as a result of their actions.

64. Plaintiff and the members of the respective Classes have suffered loss as a direct result of Defendants' conduct.

65. Plaintiff, on his own behalf and behalf of the other class members, seeks the imposition of a constructive trust on and restitution of the proceeds from MEI's and Lavalife's unauthorized charges, as well as attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## COUNT IV
### (Trespass to Chattels on behalf of the MEI, Lavalife, and Verisign Classes)

66. Plaintiff incorporates by reference the foregoing allegations.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
13

E-FILED: Oct 16, 2008 11:03 AM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-125363 Filing #G-11515

67. Defendants and/or their agents intentionally and without consent, transmitted mobile content to Plaintiff's cellular phone and the wireless devices of the members of the respective Classes.

68. Plaintiff owns, possesses, and uses his cellular phone. Likewise, the members of the respective Classes own, possess, and use the wireless devices to which Defendants transmitted or caused to be transmitted mobile content. These wireless devices are the personal property of the members of the respective Classes.

69. In the course of transmitting mobile content to these wireless devices, Defendants and/or their agents intentionally and without consent, gained access to these devices, used these devices, occupied the memory of these devices, and/or dispossessed Plaintiff and the members of the respective Classes of unencumbered access to their wireless devices.

70. In so doing, Defendants intentionally intermeddled with, damaged, and deprived Plaintiff and the members of the respective Classes of their wireless handsets, or a portion thereof. This damage included, but was not limited to, the unauthorized charges for mobile content which Defendants obliged Plaintiff and the other members of the respective Classes to pay. Defendants trespassed on the chattels of Plaintiff and the other members of the respective Classes.

71. Plaintiff, on his own behalf and behalf of the other members of the respective Classes, seeks damages from Defendants' trespass, as well as attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT V**
**(Tortious Interference with a Contract on**
**behalf of the MEI, Lavalife, and Verisign Classes)**

72. Plaintiff incorporates by reference the foregoing allegations.

73. Plaintiff and the members of the respective Classes had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money

1  in exchange for activation of their cellular telephone accounts and their carriers' promise to
2  provide various communication and related services and to bill Plaintiff and the members of
3  the respective Classes only for those products or services the purchase of which they had
4  authorized.

5      74. Defendants knew of said contractual relationships and intended to and did
6  induce a breach or disruption of the contractual relationships.

7      75. Defendants intentionally interfered with said contractual relationships through
8  improper motives and/or means by knowingly and/or recklessly continually causing to be
9  placed on the cellular telephone bills of cellular telephone owners across the nation
10  unauthorized charges.

11      76. Plaintiff and the other members of the respective Class suffered loss as a
12  direct result of the Defendants' conduct.

13      77. Plaintiff, on his own behalf and behalf of the other class members, seeks
14  damages from Defendants' tortious interference, as well as attorney's fees and costs pursuant
15  to Cal. Code Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Miguel Coren, on behalf of himself and the respective Classes, prays for the following relief:

    a) Certify this case as a class action on behalf of the MEI, Lavalife, and Verisign Classes defined above and appoint Miguel Coren as representative of these Classes, and appoint KamberEdelson, LLC, as lead counsel;

    b) Declare that the actions of MEI and Lavalife, as set out above, constitute unjust enrichment, trespass to chattels, and tortious interference with a contract, violate Cal. Civ. Code § 1770 and Cal. Bus. & Prof. Code § 17200;

    c) Enter judgment against Defendants for all economic, monetary, actual, consequential, and compensatory damages caused by their conduct, and if

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
15

1  their conduct is proved willful, award Plaintiff and the respective Classes
2  exemplary damages (for the sake of clarity, Plaintiff explicitly disclaims any
3  claim for damages under the CLRA at this time);

4     d) Award Plaintiff and the Class reasonable costs and attorneys' fees;

5     e) Award Plaintiff and the Class pre- and post-judgment interest;

6     f) Enter judgment for injunctive and/or declaratory relief as is necessary to
7  protect the interests of Plaintiff and the Class; and

8     g) Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff request trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: October 15, 2008

KAMBEREDELSON, LLC

By: _____
ALAN HIMMELFARB
One of the Attorneys for MIGUEL
COREN, individually and on behalf of
Class of similarly situated individuals

Alan Himmelfarb (SBN 90480)
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Vernon, California 90058
Telephone: (323) 585-8696

KAMBEREDELSON, LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
16